TEXAS & P. RY. CO. v. SMITH et al.

(Circuit Court of Appeals, Fifth Circuit. April 22, 1902.)

No. 1,101.

1. RAILROADS—HAND CARS—INJURY TO EMPLOYE—NEGLIGENCE OF FELLOW SERVANTS.

A hand car is within the meaning of Acts Tex. 1897, p. 14, § 1, providing that railroad companies shall be liable for all damages sustained by any servant or employé, while engaged in the work of operating their "cars, locomotives, or trains," by reason of the negligence of any other servant or employé, and the fact that such servants or employés were fellow servants shall not destroy such liability.

2. SAME—VICE PRINCIPAL—RIGHT TO RECOVER FOR INJURIES.

A foreman of a gang of men engaged in repairing the tracks of a railroad company is within the protection of the section recited (Acts Tex. 1897, p. 14, § 1), and the fact that by section 2 he is made a vice principal does not bar his recovering for injuries resulting from the negligence of the men under his control.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Texas.

By an action commenced in the circuit court of the United States for the Northern district of Texas, Mrs. F. S. Smith, for herself and as next friend and guardian of her two minor children, C. F. and B. S. Smith, sued the Texas & Pacific Railway Company for damages on account of the death of F. S. Smith, her deceased husband, and the father of the minor children. In her petition she alleges that on April 11, 1899, Smith was in the employ of the defendant company as foreman of an extra gang of trackmen, whose duty it was to lay steel, etc., and, while thus employed, received certain personal injuries which resulted in his death, while exercising due care; that the company was negligent in delivering to Smith a defective and unsafe hand car to be used by him and his men in the performance of their duties; that at the time of receiving the injury Smith was riding on the front hand car, with a number of his men, returning from their work, and

that the rear hand car was defective, and, being operated by some of the other men, was permitted by them to run into and collide with the front car, and caused Smith to be thrown off and killed; that one of the causes of the collision was the inability of the men on the rear hand car to control the same, by reason of its being in defective condition. It is also alleged that the accident was directly caused and contributed to by reason of the negligence and carelessness of the agents and servants in charge of the rear hand car, in permitting the same to run into and strike the front hand car, and that the company was liable by reason of such negligence; that the agents of defendant on the rear hand car were not fellow servants of Smith, under the statutes of Texas, and were engaged in the operation of one of the cars of the defendant, within the meaning of the Texas statutes relating to the liability of railroad companies for personal injuries; and that the railroad company was liable to plaintiff for the negligence of its servants and agents. The defendant answered, among other things pleading general denial, contributory negligence, act of fellow servant, and that Smith could, by ordinary care, have known of and had knowledge of the condition of the hand car which was being operated, and of the results which would follow, and that he remained in the service with such knowledge, and assumed all risk arising from the condition of the car.

On the trial the material evidence was substantially as follows: That F. S. Smith was dead. That he left the plaintiff Mrs. F. S. Smith, his surviving wife, and two minor children, Courtney F. Smith and Bert S. Smith, and that during his lifetime he had contributed toward their support an amount sufficient to warrant the jury in the verdict given. The evidence also showed that the deceased was in the employ of the Texas & Pacific Railway Company just prior to his death as foreman of what is known as the "extra gang." This force consisted of from 15 to 20 men, whose business and duty it was to look after and repair the track, and to perform such other duties as might be required in the maintenance of said track. This extra gang force had their headquarters at the town of Eagle Ford, on the line of the Texas & Pacific Railway Company, and their section extended several miles west. All of this force, except the deceased, Smith, were negroes; and all worked together while engaged in the repairing and keeping the track in order, and were under the supervision and control of Smith. He kept their time, and had the power to hire and discharge them, and had, in fact, hired the most of the gang or force of men working under him at the time. He had been working as foreman of this extra gang for about six weeks. Prior to that time he had been regular section foreman, working for the defendant company. He had worked awhile as extra-gang foreman in the yards at Ft. Worth, and then was moved with his force to Eagle Ford; had been there just one day prior to the accident. This force had in use at the time two hand cars, which were used to carry the men and tools out to their work in the morning, and bring them in to their quarters in the evening. It was usual and customary for eight or ten men to ride upon each hand car. These cars were propelled by levers, usually from four to six men on the car, working the lever while in motion, unless same should be going down grade. It appears that on the 11th day of April, 1899, this extra gang had used two hand cars to go out to work about four miles from Eagle Ford, and after the day's work was through they got upon the hand cars for the purpose of returning to Eagle Ford. Smith, the foreman, got upon the front car, and took his seat upon the front part of the front hand car, with about six men with him. This car was set in motion, going toward Eagle Ford. Shortly afterward the remainder of the men, to the number of about six or eight, got on the second car, and followed them. After proceeding on their way about 1½ miles, the first or front car was run into or struck by the rear car, which caused Smith, who was seated on a water keg, to fall or be thrown forward, so that the front car ran over him, inflicting injuries upon him from which he died. The evidence shows, also, that this rear car which ran into the one upon which Smith was riding had been delivered to Smith, by the direction of the defendant's road master, that morning, at Eagle Ford, for use.

E. Greer, a witness for the plaintiff, testified by deposition that the acci-

dent occurred about 20 minutes after 6, after they had done the day's work, and had gone a distance of about 1½ miles from where they had been at work during the day. The front car, on which he was riding, was larger than the second car. One Les Johnson, one of the laborers, was in charge of the second car, and, when the order to quit work was given in the evening by Mr. Smith, the hand cars were placed on the track by the men, and everything gotten ready to go back to Eagle Ford, and they started, and after they got started the car was going at a rapid rate of speed. At the time of starting, the front car was about 120 feet ahead of the second car, and when they reached the top of the grade, and started down, the second car ran into the first car, on which Smith was riding, which threw him over, and the car ran over him, which resulted in his death. The front car at the time of the accident was going about 10 or 12 miles an hour, and where the accident occurred the ground was practically level. He gave it as his opinion that the brakes of the second car were in good condition, and it could have been stopped in about 60 feet, but did not know when the man on the rear car first applied the brakes. Will Hurd, another of the laborers, testified with reference to the accident, and testified that the brakes on the rear hand car were not in good condition, and that the brakes were defective. John Page and Wheeler testified to the same effect. The testimony of Murphy, Lothron, and Fitzgerald was to the effect that the rear hand car was in good condition; that the accident was caused by the negligence of the men on the rear car, in allowing it to run too close to the front hand car, and in not stopping it in time to avoid the collision; and that, if the brakes had been properly applied, the hand car could have been stopped. There was testimony also tending to show that Smith, the foreman, was guilty of negligence in allowing the men on the rear hand car to run too close to the front hand car. The testimony of the plaintiffs' witnesses Lesser and Lambert was to the effect that the hand cars were kept a reasonably safe distance apart. Murphy, road master of the Texas & Pacific Railway Company, testified that he had general supervision over the foreman, Smith; that he had been employed by him as foreman of the extra gang, and that he had been acting as such for about six weeks; that prior to that time he had been a regular section foreman, and, as extra-gang foreman, Smith had power to employ and discharge all hands who worked under him; that he had employed some of those working under him at the time of the accident; that the car which caused the accident had been shipped to Smith for his use prior to that time, while Smith was working in the yards at Ft. Worth, and then taken off and reshipped to him at Eagle Ford; that it had not been in the shop, but had been in use, and each foreman was supposed to inspect the hand cars and see that they were kept in proper condition, and, if anything was wrong about them, he was supposed to report it for repairs; that the foreman was supposed to look after and be responsible for hand cars, as there was no hand-car inspector, but this duty rested upon Foreman Smith, and he had never made any report or complained to him of the condition of the car.

The provisions of the Texas statute drawn in question are as follows:

"Section 1. Every person, receiver or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this state, shall be liable for all damages sustained by any servant or employé thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver or corporation, by reason of the negligence of any other servant or employé of such person, receiver or corporation, and the fact that such servants or employés were fellow-servants with each other shall not impair or destroy such liability.

"Sec. 2. All persons engaged in the service of any person, receiver or corporation, controlling or operating a railroad or street railway, the line of which shall be situated in whole or in part in this state, who are entrusted by such person, receiver or corporation with the authority of superintendence, control or command of other servants or employés of such person, receiver or corporation, or with the authority to direct any other employé in the performance of any duty of such employé, are vice-principals of such person, receiver or corporation, and are not fellow-servants with their co-employés.

"Sec. 3. All persons who are engaged in the common service of such person, receiver or corporation, controlling or operating a railroad or street railway, and who, while so employed, are in the same grade of employment and are doing the same character of work or service and are working together at the same time and place and at the same piece of work and to a common purpose, are fellow-servants with each other. Employés who do not come within the provisions of this article shall not be considered fellow-servants." Acts Sp. Sess. 1897, p. 14.

Geo. Thompson and T. J. Freeman, for plaintiff in error.

R. L. Carlock, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. Substantially, only two questions appear to be presented by the record in this case: (1) Is a hand car within the meaning of the provisions of section 1 of the Texas statute? (2) Was the deceased, F. S. Smith, such an employé of the defendant that, under the terms of section 1 of the act, his representatives can recover for his death, if caused by the negligence of the men working under him?

Without rehearsing or attempting to extend or elaborate the reasoning that we find in reported cases infra, we content ourselves with expressing the view that the fair construction of the Texas statute requires that the first question stated above be answered in the affirmative. We cite, with approval both of its decision and of the reasoning contained in the opinion, the case of Benson v. Railroad Co. (Minn.) 77 N. W. 798, 74 Am. St. Rep. 444; also the decision of the supreme court of Alabama in Railroad Co. v. Crocker, 11 South. 264. And we concur in the suggestion of counsel for the defendants in error that this construction of the statute receives substantial support from the decision of the court of civil appeals of Texas in the case of Railroad Co. v. Baker, 58 S W. 965.

We come to the second question. As we understand it, the contention of the plaintiff in error is that by reason of the fact that under section 2 of the Texas law the deceased was a vice principal of the plaintiff in error, and not a fellow servant with his co-employés, had his injuries not resulted in his death he could not have recovered on account of the negligence of these co-employés. While not distinctly so expressed, the argument seems to be that, from the fact that the deceased had the authority to choose his subordinates in the extra-gang force over which he was foreman, he assumed the risk of any injury resulting to himself from the negligence of any one of these 15 or 20 men under his charge, and that, as against him, evidence of such negligence on their part is evidence of contributory negligence on his part, such as would bar him from recovery for injuries not resulting in his death, and therefore would bar the defendants in error from recovery in this case. If such is not the purpose and effect of the argument, we are not able to see its application. If such is its purpose and effect, it does not appear to us to find any support in the authorities cited, and seems to us to be manifestly unsound. A careful consideration of the provisions of the present statute given in the statement of the case, and of the precedent legislation on that subject set out in the brief of the plaintiff in error, which we do not deem it

necessary to quote, does not lead us to conclude that the other sections of the statute should receive a construction that would bar the foreman of a gang from the protection afforded by such section 1.

We do not deem it necessary to notice the other matters suggested in the argument by counsel for the plaintiff in error, further than to say that they do not commend themselves to us as having sufficient force to warrant us in setting aside the judgment of the circuit court.

We conclude that that judgment was right, and it is therefore affirmed.

PARDEE, Circuit Judge, dissents.