UNITED STATES of America,
Petitioner-Plaintiff,

v.

·284,392 SQUARE FEET OF FLOOR SPACE IN the property known as 227–237 SCHERMERHORN STREET, AND 240–252 LIVINGSTON STREET, BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, and Martin S. Goldring, Hyman J. Sobiloff, Gabriel Lavine, Samuel A. Strassler; Unknown Owners, Defendants.

No. 61–CD–693.

United States District Court
E. D. New York.

Feb. 20, 1962.

See also 203 F.Supp. 75.

Harry T. Dolan, Sp. Asst. to Atty. Gen., of U. S., for petitioner-plaintiff.

Paul, Weiss, Rifkind, Whanton & Garrison, New York City, for defendants Hyman J. Sobiloff, Gabriel Lavine, and Samuel A. Strassler, Samuel J. Silverman, New York City, of counsel.

BARTELS, District Judge.

This is an action brought by the Government to take property under the power of eminent domain. The complaint filed on September 26, 1961, alleges that the action was instituted at the request of the Commissioner, Public Building Service, General Services Administration, to take a leasehold estate in or the right to use and occupy the property described therein for public use, namely, office space and related purposes, for "a term of years commencing July 1, 1961, and ending June 30, 1963, with the Government having the right to terminate at any time on or after June 30, 1962, upon 60 days prior written notice, together with the right in the United States to remove, within a reasonable time  *  * any and all improvements and structures placed therein or thereon by and for the United States during its use and occupancy of the property under said initial term or any extended term or during the term of Lease No. GS–02B–474 and any extensions thereof  *  *  *."

It is further provided in the complaint that "Said right to use and occupy the above described property is subject to the same interests, rights, and conditions as incorporated in Lease No. GS–02B–474 [and supplemental agreements and renewals]."

The Declaration of Taking filed the same day contains a similar description of the estate taken, and a recital that the amount of $175,344.75 would be "just compensation for the period commencing July 1, 1961 and ending June 30, 1962". Pursuant thereto, a deposit of said sum

was made into the Registry of this Court. An order for possession issued the following day, September 27, 1961.

Defendants in their answer object to the action and taking on the following grounds: (a) there is no authority for the condemnation of the interest sought to be condemned; (b) a taking "subject to the conditions" in prior leases between the parties subjects the defendants to *in personam* obligations; (c) the action, commenced September 26, 1961, seeks to condemn the property *retroactively* as of July 1, 1961 and is therefore improper; and (d) the deposit pursuant to the Declaration of Taking does not reflect a good faith estimate of just compensation, is arbitrary and hence violative of law.

On this state of the record the Government moves to strike the answer on the ground that it fails to allege facts sufficient to constitute a defense. Defendants reply by moving to dismiss the complaint and vacate the Declaration of Taking. In the alternative, defendants seek to withdraw the funds deposited pursuant to the Declaration of Taking in the event that the primary relief prayed for is denied. These motions, taken together, question the respective pleadings by raising issues which the Court will consider *seriatim*.

## I. Estate to be Taken

### A. *In personam obligations*

■■ Defendants contend that the complaint and Declaration of Taking are invalid because on their face they seek to condemn certain terms and obligations which impose *in personam* obligations on the landlord. Section 258a of Title 40 United States Code Annotated, requires that the Declaration of Taking shall contain a description of the lands to be taken sufficient for identification as well as the estate or interest in the lands to be taken. Rule 71A of the Rules of Civil Procedure provides that the complaint shall contain a description of the property sufficient for identification and also the interest to be acquired. The prior lease granted or reserved to the landlord certain rights in the leased premises. Accordingly, some reference to the prior lease was necessary to describe and circumscribe the precise nature of the use and occupancy taken. Moreover, the lessee had certain rights of removal under the old lease and in tacking on its new use and occupancy, it was natural that some reference be made thereto. The Government has denied, on the record, that under the clause referring to the prior lease, it seeks to impose any duties or obligations upon the defendants. On the contrary, it states that it now seeks to take no more of an interest in the premises than it previously possessed under the prior lease without, however, any personal obligations. It is agreed by both parties that no *in personam* obligations can be imposed upon the landlord. It is true that the description contained in the Declaration of Taking and the complaint for purposes of identification and taking was not the most artistic or accurate. Nevertheless, a reasonable meaning which will support a pleading should, if possible, be adopted rather than one which will defeat the pleading. Reconstruction Finance Corporation v. J. G. Menihan Corporation, D.C.N.Y. 1938, 22 F.Supp. 180; Sewerage Commission of City of Milwaukee v. Activated Sludge, Inc., 7 Cir., 1934, 69 F.2d 594. Viewing the complaint and Declaration of Taking realistically, the Court concludes that they seek only to condemn the use and occupancy of the premises.

It is possible that the landlord may subsequently agree to furnish the Government the same services theretofore rendered under the prior lease, but no such agreement on the part of the landlord can be compulsory. Its existence, or lack of existence, will affect the amount of any award hereafter made.

### B. *Removals*

■ Objection is made to the attempt by the Government to obtain the right to remove "any and all improvements and structures" placed on the premises during its use and occupancy. Defendants claim that the Government is condemning at present a portion of the real

estate which may or may not spring into existence in the future. With respect to past improvements, the Government has a right of removal under the prior leases. With respect to future improvements, there is no property which the defendants now own which is being condemned. The matter is highly speculative because there may not be any "improvements" in the future. Moreover, only improvements that become fixed to the real estate will create any rights in the defendants, and the value of those rights, if any, can be ascertained at a valuation hearing held for the purpose. If after removing any improvements the premises are not returned to the defendants in the same condition as received by the Government, then the latter would be obliged to respond in damages for any injury to the real estate. These questions seem to be the ones which naturally flow from use and occupancy of premises.

## C. *Indefiniteness*

██ The next objection to the nature of the estate taken is that the Government seeks to condemn use and occupancy for a two-year term, with a right to terminate on 60 days' written notice on or after the expiration of the first year's term. Defendants contend that the estate to be condemned is therefore too vague to be defined. Condemnation of leasehold interests in property with the right of renewal, has been judicially approved. United States v. 396 Corp., 2 Cir., 1959, 264 F.2d 704, cert. den., 361 U.S. 817, 80 S.Ct. 60, 4 L.Ed.2d 64. In effect, the arguments advanced by defendants raise the issue of whether or not such an interest is too difficult to evaluate, not the validity of the taking.[1] Adverting to the question of evaluation, it is not disputed that an option to renew may be valued and appraised. United States v. Petty Motor Co., 1946, 327 U.S. 372, 380–381, 66 S.Ct. 596, 90 L.Ed. 729. While it is true that an evaluation in advance of the commencement of the op-

tion period entails a certain amount of speculation, that does not *per se* invalidate the proceeding. At the time that the value of the interest is fixed some equitable method of determining compensation may be prescribed; for example, the Court might fix the value on the basis of a two-year taking, reserving and retaining part of the funds subject to reevaluation of the taking at the end of the two-year term if in fact the Government exercises its option to terminate and the premises remain vacant.

## II. Estimated Compensation in Declaration of Taking

██ Defendants argue that the amount set forth in the Declaration of Taking as "just compensation for the period commencing July 1, 1961 and ending June 30, 1962" does not comply with the statutory requirements because it is so inadequate as to indicate lack of good faith. In support of this contention defendants stress the fact that under the most recent lease for the premises the Government paid a yearly rental of $423,390 (less $750 for certain services provided by the Government-lessee), while the deposit herein is $175,344.75.

It has been held that a District Court is without power to enter an order vacating a Declaration of Taking upon an allegation of bad faith in determining the estimate. In re United States, 5 Cir., 1958, 257 F.2d 844, cert. den., Certain Interests in Property in Hillsborough County, Fla. v. United States, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 228. The rationale of the decision is that the sole function of the Declaration of Taking is to vest the right of possession in the United States and to prevent interest from running on such amounts as the Government has deposited with the court. "The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment 'on account of' compensation and not a final settlement of the

---

[1]. A leasehold such as is condemned herein is an "interest in land". N. Y. Real Property Law, McKinney's Consol. Laws, c. 50, § 30. See Sec. 19, Restatement of Law of Property.

amount due." United States v. Miller, 1943, 317 U.S. 369, 380, 381, 63 S.Ct. 276, 284, 87 L.Ed. 336. As the Supreme Court explains, the taking proceeds without action by the court, and the sole function of the court is to ascertain and award damages. Since the taking does not require court action and the value to be paid is the sole issue and the amount of the deposit is payment "on account of" compensation, it is difficult for the Court to find authority to invalidate or modify the declaration. See Dade County, Florida v. United States, 5 Cir., 1944, 142 F.2d 230, 231. It should be noted in passing that while the complaint in a condemnation case may be treated as any other pleading (within the exceptions set forth in Rule 71A, Fed.Rules Civ.Proc., 28 U.S.C.A.), a Declaration of Taking is not in the same category.

In this circuit, however, the Court has observed in United States v. 44.00 Acres of Land, etc., 2 Cir., 1956, 234 F.2d 410, 416, cert. den., 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123:

> "We may concede, *arguendo*, that a court has jurisdiction to vacate a Declaration of Taking where, contrary to the implied requirements of the statute, the estimate of the value of the condemned property is made by the Government in bad faith."

In that case the Government deposited $300,000 and the court vacated the same, whereupon the Government amended the Declaration and deposited a total of $500,000. A second motion to vacate was granted, and a new amended Declaration was filed, again depositing $500,000. Upon the trial, commissioners appointed by the court valued the property in excess of $1,480,000, and the court reduced the award to $760,778.35. With regard to the action of the District Court, the Circuit Court noted:

> " * * * the district court had no power to set aside the first amended Declaration of Taking, and its order so doing is void."

From the above, it would appear that the function of the deposit made in conjunction with the Declaration of Taking in this case is to prevent interest from accruing on $175,344.75 of any award made to the defendants herein. Unless the deposit is so grossly inadequate as to amount to no deposit at all, assuming *arguendo* power in this Court to examine the fairness of the estimate, the Court cannot question the amount of the deposit without conducting a preliminary inquiry as to the value of the property. Since this is the ultimate issue in the case, such a determination would necessitate the conduct of two separate hearings to ascertain the one essential fact. Unless mandatory, a statutory construction reaching such result should not be adopted.

Moreover, the deposit for use and occupancy is in a different category than a deposit for a fee interest in real property because such a deposit is in the nature of advanced rent and the landlord will upon the evaluation receive any remainder due before the expiration of the occupancy. On the facts herein the Court cannot say that the sum deposited is "contrary to the implied requirements of the statute" and made in bad faith. It finds that the Government has in this respect complied with the pertinent statutes.

### III. Retroactivity

Defendants' final contention is that the Government was in possession of the premises as a hold-over tenant as of September 26, 1961, when the instant complaint and Declaration were filed, and that since the complaint and Declaration seek to vest title in the Government as of July 1, 1961, they are invalid in that they seek retroactively to condemn the property as of two months before the action was commenced.

The Government was in possession of the premises when the lease between the parties expired on June 30, 1961. The parties were then unable to agree upon the rental for the ensuing term although negotiations continued. The Government now contends that its possession after the termination of the lease was a taking, citing United States v. Dow, 1958, 357 U.S. 17, 22, 78 S.Ct. 1039, 2

L.Ed.2d 1109. The defendants counter that since negotiations were then in progress the Government had not manifested an intention to take by remaining in possession. Under the circumstances of this case the Court concludes that the action of the Government in remaining in possession was not an act of taking, and cases such as United States v. Dow, supra, are not in point since in this case there has been no independent entry.

The decision in United States v. Certain Lands, etc., and Kathleen Gottfried, S.D.N.Y., Civ. Action 132–266, November, 1958, 203 F.Supp. 454, appears to be more in point. Faced with a somewhat analogous situation Judge Knox held that the condemnation proceeding should proceed with the value to be fixed as of the date of the taking by Declaration and that the defendant's claim for rent for the interim period be prosecuted in the Court of Claims. Accordingly, he granted leave to the Government either to dismiss that part of the complaint seeking relief prior to the date of the complaint, or to stay the action pending a determination of the action in the Court of Claims.

█ It appears to this Court that a somewhat similar result is compelled. The act of holding-over did not constitute notice of taking as contended by the Government. Consequently, the first notice received by defendants of intention to take was afforded by the Declaration of Taking, effective as of the date filed. That part of the complaint seeking possession from July 1, 1961 through September 26, 1961 must therefore be and is stricken as surplusage.

██ One last matter remains for consideration. The defendants have requested, as alternative relief, that they be allowed to withdraw the amount deposited with the Registry of the Court pursuant to the Declaration of Taking. This is opposed by the Government on the ground that having attacked the jurisdiction of the Court, the defendants are in effect estopped from seeking aid of the Court which they claim lacks jurisdiction. Prayers for inconsistent and alternative relief are not unique under the Federal procedure. See Rule 8(a), Fed.Rules Civ.Proc., 28 U.S.C.A. The decision herein and the order to be entered thereon disposes of the attack upon the jurisdiction of this Court and leaves the defendants free to pursue their alternative relief. If the Government is to receive relief from interest on the amount deposited, the defendants should be entitled to the use of the monies.

Leave is granted to serve an amended complaint in accordance with the above within ten (10) days from the date hereof.

Settle order within five (5) days on two (2) days' notice in accordance herewith.